UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------------------------x

BRANDON G. WAXMAN,

                    Plaintiff,

        v.

NATIONAL BOARD OF MEDICAL EXAMINERS,

                  Defendant.

--------------------------------------------------------------------------x

**COMPLAINT**

Case No.: 1:17-cv-2528

JURY DEMAND

     Plaintiff Brandon G. Waxman (hereinafter "Plaintiff") brings this complaint against the Defendants, National Board of Medical Examiners (hereinafter "the NBME" or "Defendant"), seeking monetary, injunctive, and declaratory relief, and alleges as follows:

## <u>INTRODUCTION</u>

     1.     This is an action for injunctive, monetary and declaratory relief against the Defendant, based on its discriminatory conduct against Plaintiff, a person with disabilities protected by federal, state and local disability civil rights protections.

     2.     Plaintiff is presently eligible to sit for the United States Medical Licensing Examination (hereinafter "USMLE") Step 1 from March 1, 2017 through May 31, 2017 and in connection therewith has requested that he be provided with modifications, auxiliary aids, and/or services (hereinafter collectively referred to as "testing accommodations") more particularly, 100% extended testing time (also referred to as "double time") on all sections of the USMLE. These test accommodations are necessary in order to make the USMLE accessible to Plaintiff

because of his disabilities, which substantially limit one or more major life activities and/or major bodily functions.

3.     Defendant has discriminated against Plaintiff by its failure to provide testing modifications or accommodations in violation of the Americans with Disabilities Act, as amended (hereinafter "ADA"), 42 U.S.C. §12101, *et seq., 29* U.S.C. §701, *et seq.*, and of the New York State Human Rights Law (hereinafter "NYSHRL"), N.Y. Exec. L §290 *et. seq* and the New York City Human Rights Law (hereinafter "NYCHRL"), N.Y. C. Admin. Code §8-101, *et. seq.* Permanent injunctive relief is necessary to ensure that Plaintiff is no longer excluded from, deterred from or otherwise discriminated against in taking the USMLE.

4.     Plaintiff has submitted to the NBME extensive documentation of his disabilities and entitlement to testing accommodations as required by the NBME's policies, practices and procedures for requesting such testing accommodations.  The NBME has failed to provide Plaintiff with the accommodations he needs to make the USMLE accessible to him.  Plaintiff brings this action to enforce his rights to equal access under the ADA, the NYSHRL and the NYCHRL.

5.     The Defendant administers the USMLE Step 1, a standardized exam and requisite for medical licensure in the United States.  The NBME has the legal, educational and professional responsibility to offer testing accommodations to individuals with disabilities on the USMLE Step 1. Such accommodations, which are neither expensive nor difficult to provide, allow individuals with learning disabilities and other brain based disabilities, like Plaintiff, to demonstrate their medical knowledge as assessed by the USMLE.

## JURISDICTION

6.     These claims arise under the ADA, and this Court has subject matter jurisdiction

based on a federal question under 28 U.S.C. §§1331 and 1343(a)(4).  This Court also has

jurisdiction pursuant to: (1) 42 U.S. C. § 2000a, providing for civil actions in this Court by any

person subjected to discrimination on the basis of disability in violation of Title III of the ADA

and (2) 28 U.S.C. § 1343 for any civil rights action authorized by law.

7.      This Court has jurisdiction to issue a declaratory judgment pursuant to 28 U.S.C.

§2201(a) and further relief pursuant to 28 U.S.C. §2202.

8.      Venue is proper in the Southern District of New York pursuant to 28 U.S.C.

§1391, in that acts of discrimination have taken place in this District and Plaintiff's permanent

residence is within this District.

## PARTIES

9.      Plaintiff, a permanent resident of New York, New York, is a 32 year-old medical

student at University at Buffalo School of Medicine.  His school has required him to take the

USMLE by April 2017.  Plaintiff requested extended time testing accommodations for USMLE

Step 1 in August 2015, December 2015, and February 2017, and Defendants denied each of

Plaintiff's requests.

10.     Plaintiff is an individual with disabilities under the ADA, the NYSHRL and the

NYCHRL and is entitled to testing accommodations on the USMLE.

11.     Plaintiff's impairments substantially limit him in the performance of numerous

major life activities including, but not limited to, reading, writing, concentrating, thinking,

learning, working, and taking tests.

12.     Plaintiff's impairments all substantially limit him in the operation of brain and

neurological functioning.

13.     NBME is a District of Columbia not-for-profit organization headquartered in Philadelphia, Pennsylvania.  NBME administers the USMLE, a three-step examination, the successful completion of which is required for medical licensure in the United States.  Additionally, one's level of performance on the USMLE is a prominent factor used in the highly competitive candidate selection process by residency training programs.  Defendant is a private entity that offers examinations related to applications and credentialing to postsecondary education, professional and trade purposes and as such is subject to the non–discrimination and reasonable accommodation requirements of the ADA and state and local disability civil rights laws. The NBME administers the USMLE throughout the country.

## FACTUAL ALLEGATIONS

14.     Plaintiff is a 32 year old permanent resident of New York, New York and is a student at University at Buffalo School of Medicine.

15.     Plaintiff suffers from multiple disabilities, including but not limited to, Attention-Deficit/Hyperactivity Disorder, learning disabilities and generalized anxiety disorder.  Wherein most people do not experience discrete processing deficits inconsistent with their intellectual abilities or "expectation," Plaintiff's difficulties are accepted by professionals in academia and clinical psychologists and neuropsychologists as hallmarks of learning and attention disabilities.

16.     Plaintiff was first referred for a psychoeducational evaluation in 1993 at the age 8 after a screening in school revealed organizational and expressive language weaknesses.  Subsequent to this evaluation Plaintiff has been evaluated by numerous clinicians and has, at the recommendation of his clinicians, received extended time testing accommodations in grammar school, high school, college, and medical school, as well as for the college admissions exams offered by the College Board, and the medical school admissions test offered by the Association

of American Medical Colleges.

17.     Plaintiff commenced his medical education at University at Buffalo School of Medicine in August of 2013.

18.     Plaintiff was expected to take and pass USMLE Step 1 in the fall of 2015.

19.     Plaintiff was unable to pass the USMLE by this deadline because Defendant NBME denied his request for extended time accommodations.

20.     Plaintiff first requested USMLE Step 1 extended time accommodation in August 2015.  The documentation submitted in support of this request included the following:

    a.  A cover letter from Jo Anne Simon P.C., dated August 14, 2015;

    b.  An August 13, 2015 e-mail confirmation of the status of Plaintiff's USMLE application;

    c.  A USMLE Request for Test Accommodations form completed by Plaintiff, dated 7/13/2015;

    d.  A personal statement from Plaintiff, dated 8/4/2015;

    e.  An April 7, 2015 neuropsychological evaluation report by James Lawrence Thomas Ph.D.;

    f.  A September 15, 2010 neuropsychological evaluation report by James Lawrence Thomas Ph.D.;

    g.  An April 2001 psychological and neuropsychological consultation report by William M. Dince, Ph.D.;

    h.  A May 1998 psychological report by Barbara Z. Novick, Ph.D.;

    i.  A June 1993 psychoeducational evaluation report by Elizabeth Williams Auricchio, Ph.D.;

j.  An April 27, 2015 letter from State University of New York at Buffalo verifying Plaintiff's receipt of double time (100%) testing accommodations;

k.  A USMLE Certification of Prior Test Accommodations completed by State University of New York at Buffalo;

l.  An April 7, 2011 letter from New York University verifying Plaintiff's receipt of double time testing accommodations;

m.  A September 6, 2011 letter from Bowdoin College verifying Plaintiff's receipt of double time testing accommodations;

n.  A January 10, 2012 letter from Ethical Culture Fieldston School verifying Plaintiff's receipt of double time testing accommodations;

o.  A January 3, 2012 letter from Columbia Grammar and Preparatory School verifying Plaintiff's receipt of extended time testing accommodations;

p.  An April 6, 2015 letter from the AAMC verifying Plaintiff's receipt of extended time testing accommodations;[1]

q.  Plaintiff's MCAT Score Report;

r.  An August 16, 2001 letter from the College Board verifying Plaintiff's receipt of double time testing accommodations;

s.  Plaintiff's  College Board Score Reports;

t.  Plaintiff's Academic Transcript from The Fieldston School;

u.  Plaintiff's Academic Transcript from Bowdoin College;

v.  Plaintiff's Academic Transcript from New York University; and

w.  Plaintiff's Academic Transcript from State University of New York at Buffalo.

---

[1] Plaintiff received only 50% (time-and-a-half) extended time for the MCAT and, as a consequence, was unable to complete all of the questions on the exam.

21.     The documentation listed above substantially complies with the NBME's written policy regarding requests for disability testing accommodations.

22.     By letter dated October 20, 2016, Defendant denied Plaintiff's request for testing accommodations.   In this two-page letter, Defendant acknowledged that it received and reviewed documentation from several clinicians who had or continue to have firsthand knowledge of Plaintiff's disabilities, and who recommended extended time accommodations. Nevertheless, Defendants wrote:

> Accommodations are intended to provide access to the USMLE testing program for individuals with a documented disability as defined by the ADA.  A diagnostic label, in and of itself, does not establish coverage under the ADA, nor does prior receipt of accommodations for a particular activity guarantee that identical accommodations are indicated or will be available in all future settings and circumstances.  The ADA covers individuals who are substantially limited in a major life activity…

> The serial evaluations that you provided from 1993 through 2015 demonstrate reading skills that are well within the average range compared to same age peers.  Overall, your documentation does not demonstrate that double testing time is an appropriate modification of your USMLE Step 1 test administration. Therefore, after a thorough review of all of your documentation, I must inform you that we are unable to provide you with the requested accommodations.

23.     By letter from Jo Anne Simon, P.C. dated December 31, 2015, Plaintiff sought reconsideration of the NBME's denial of accommodations.   Plaintiff's counsel also submitted a November 30, 2015 letter from James Lawrence Thomas, Ph.D., that was responsive to the NBME's rationale for denial.  Dr. Thomas wrote, in part:

> It is worth pointing out that the previous evaluations gave clear evidence and conclusions indicating that Mr. Waxman had a learning disability.  They may not have given a diagnosis, but in the reports it is indicated that Mr. Waxman had scores in the area of reading below expectation, especially compared to his

intelligence. This is essentially the descriptive definition found in all recent versions of the Diagnostic and Statistical Manuals of the American Psychiatric Association. This would constitute clear evidence even if a diagnosis was not articulated in the report.

The DSM-V diagnostic criteria for learning disorder includes "inaccurate or slow and effortful word reading" as well as "difficulty understanding the meaning of what is read." Under the specifier of With Impairment in Reading, word reading accuracy, reading rate or fluency and reading comprehension are all defined as qualifiers for the diagnosis. Therefore, the DSM-V considers impaired reading rate and fluency as elements of a learning disability. The criteria states, "The affected academic skills are substantially and quantifiably below those expected for the individual's chronological age, and cause significant interference with academic or occupational performance." Mr. Waxman sufficiently meets this criteria… Reading is a complex task with several components, therefore, it is possible to perform in the average range on some components while showing significant impairment on others.

24.     By letter dated March 30, 2016, Defendant NBME once again denied Plaintiff's

request for the same disability accommodations that he has received throughout his academic

career and on every other standardized exam that he has taken to date. Defendant wrote, in part:

In her letter, Ms. Goodwin [of Jo Anne Simon P.C.] refers to an updated technical assistance published by the U.S. Department of Justice. She writes, "Mr. Waxman furnished NBME with proof of him having received the requested extended time testing accommodations on previous standardized exams and certified his current need for the testing accommodations due to disability. On the basis of that alone, his request for double time should have been approved… the law is crystal clear here as well. The NBME should have deferred to the conclusions and recommendations of Mr. Waxman's psychologists."

We respectfully disagree with your attorney's interpretation of the U.S. Department of Justice's Technical Guidance document to support her assertions. The documentation does not override the Department of Justice's actual regulations publish September 15, 2010 or otherwise impose restrictions on NBME that are at odds with NBME's rights and obligations under the ADA. In that regard, we call your attention to a settlement agreement that NBME entered into with the Department of Justice that

specifically addresses NBME's obligations in handling requests for testing accommodation on USMLE exams.

25.     A February 22, 2011 press release[2] from the United States Department of Justice's Office of Public Affairs describes the United States' settlement agreement with the NBME:

>    Under the agreement, the NBME will:
>
>    Only request documentation about (a) the existence of a physical or mental impairment; (b) whether the applicant's impairment substantially limits one or more major life activities within the meaning of the ADA; and (c) whether and how the impairment limits the applicant's ability to take the USMLE under standard conditions.
>
>    Carefully consider the recommendations of qualified professionals who have personally observed the applicant in a clinical setting and recommended accommodations based upon their clinical judgment that the individual is substantially limited in one or more major life activities within the meaning of the ADA and needs the requested test accommodations in order to demonstrate his or her ability and achievement level; such recommendations are to be based on generally accepted diagnostic criteria and supported by reasonable documentation.
>
>    Carefully consider all evidence indicating whether an individual's ability to read is substantially limited within the meaning of the ADA, including the extent to which it is restricted as to the conditions, manner or duration as compared to the reading ability of most people.
>
>    The Justice Department opened an investigation in response to a complaint from Mr. Romberg who alleged that the NBME had twice denied him reasonable testing accommodations to take the USMLE because of his disability, dyslexia, in violation of the ADA. Subsequently, the department and the NBME sought to resolve the investigation by reaching a settlement agreement.

26.     Plaintiff alleges that Defendant NBME's repeated denial of his request for accommodations is a violation of its own settlement agreement with the United States.

---

[2] https://www.justice.gov/opa/pr/justice-department-settles-national-board-medical-examiners-over-refusalto-provide-testing (last visited March 20, 2017).

27.     Subsequent to the Defendant's second refusal to accommodate Plaintiff's disabilities, Plaintiff's medical school informed him that he could not advance in its M.D. degree program without taking and passing USMLE Step 1.

28.     Plaintiff sat for USMLE Step 1 on June 24, 2015, without accommodations, and, as foreseen by him and his doctors, he was unable to pass the exam because he did not have sufficient time to accurately read, comprehend, and complete the exam.  Plaintiff also experienced significant anxiety that exacerbated the impacts of his cognitive impairments. Before even walking into his examination room, Plaintiff knew from experience that he would be unable to complete the USMLE.  When Plaintiff takes exams he usually checks the time every 5 to 10 questions to keep himself on track – a compensatory technique he has developed to help manage his disability symptoms.  Plaintiff was unable to benefit from this self-monitoring strategy when he took the USMLE because every time-check reminded him that he would be unable to complete the exam and caused him to become increasingly anxious.  Plaintiff found it very difficult to focus and comprehend what he was reading.  He had to reread questions and responses multiple times in order to comprehend them.  Plaintiff skipped over questions that would take him longer to read, but, in contrast to his experience on other exams where he had extended time, he did not have enough time on the USMLE to return to, read, and answer these skipped questions.  As a consequence, Plaintiff rushed through test questions and selected answers by "guesstimating."  Plaintiff also failed to reach the end of USMLE question block(s).

29.     Because he had not passed USMLE Step 1, Plaintiff's school required him to take a leave of absence, beginning on October 16, 2015.

30.     Plaintiff remains on leave status as of the date of this complaint.  While on leave Plaintiff has performed infectious disease research for his medical school's biochemistry and

microbiology departments.  Specifically, Plaintiff and his team have been studying the parasite

Trypanosoma Brucei, which causes African Sleeping Sickness. African Sleeping Sickness is

typically transmitted by the Tsetse fly in sub-Saharan Africa and affects tens of thousands of

people.  In the absence of treatment, the disease is considered fatal and current treatment is

highly toxic.  Plaintiff has been working to modify the gene coding for some essential proteins

with the hope of identifying a target protein for future medical intervention.  Plaintiff

accommodates his disabilities in the laboratory by working late during the week and/or working

during the weekend, essentially by using extended time such as that which he has requested from

the NBME.

31.     By letter dated February 24, 2017 Plaintiff's counsel submitted a third request for

extended time testing accommodations.  This third request included the following new

documentation which provided further evidence of Plaintiff's attention deficits, reading

disabilities, and, more recently diagnosed anxiety:

    a.   A letter from James Lawrence Thomas, Ph.D., dated February 24, 2017;

    b.   A letter from Robert Feiguine, Ph.D., dated January 17, 2017;

    c.   A letter from Lisa Burrows-MacLean, Ph.D., dated February 1, 2017;

    d.   A letter from Mark Wilson, M.D., dated January 1, 2017;

    e.   A letter from Pablo Goldberg, M.D., dated January 3, 2017;

    f.   A  letter from John Leddy, M.D., dated November 14, 2016; and

    g.   A letter from Elizabeth Auricchio, Ph.D., dated August 16, 2016.

32.     By letter dated March 13, 2017 the NBME denied Plaintiff's request for

accommodations, and wrote, in part:

      Accommodations are provided when there is clear documentation
      of functional impairment compared to most people in the general

> population and a rationale to demonstrate that the requested
> accommodation is appropriate to the setting and circumstances.
> Our thorough review of all of the documentation submitted to date
> found no new substantive information or evidence that alters the
> decision communicated in my letters of October 20, 2015 and
> March 30, 2016.

33.     Plaintiff's medical school has informed him that if he does not take and pass the
USMLE by April 2017, he will face dismissal from his medical degree program.

34.     Plaintiff alleges that Defendant's reason for denial is speculative and violates the
ADA as well as state and local laws and regulations.  ADA regulations state:

a.    "The term "substantially limits" shall be construed broadly in favor of expansive

coverage, to the maximum extent permitted by the terms of the ADA.

"Substantially limits" is not meant to be a demanding standard." 29 C.F.R. §

1630.2(j)(1)(i).

b.   "An impairment is a disability within the meaning of this section if it substantially

limits the ability of an individual to perform a major life activity as compared to

most people in the general population. An impairment need not prevent, or

significantly or severely restrict, the individual from performing a major life

activity in order to be considered substantially limiting." 29 C.F.R. §

1630.2(j)(1)(ii).

c.   "The primary object of attention in cases brought under the ADA should be

whether covered entities have complied with their obligations and whether

discrimination has occurred, not whether an individual's impairment substantially

limits a major life activity. Accordingly, the threshold issue of whether an

impairment "substantially limits" a major life activity should not demand

extensive analysis." 29 C.F.R. § 1630.2(j)(1)(iii).

d.  The determination of whether an impairment substantially limits a major life activity requires an individualized assessment. However, in making this assessment, the term "substantially limits" shall be interpreted and applied to require a degree of functional limitation that is lower than the standard for "substantially limits" applied prior to the ADAAA." 29 C.F.R. § 1630.2(j)(1)(iv).

e.  "The comparison of an individual's performance of a major life activity to the performance of the same major life activity by most people in the general population usually will not require scientific, medical, or statistical analysis. Nothing in this paragraph is intended, however, to prohibit the presentation of scientific, medical, or statistical evidence to make such a comparison where appropriate." 29 C.F.R. § 1630.2(j)(1)(v).

f.  "The determination of whether an impairment substantially limits a major life activity shall be made without regard to the ameliorative effects of mitigating measures." 29 C.F.R. § 1630.2(j)(1)(vi).

g.  "An impairment that is episodic or in remission is a disability if it would substantially limit a major life activity when active." 29 C.F.R. § 1630.2(j)(1)(vii).

h.  "An impairment that substantially limits one major life activity need not substantially limit other major life activities in order to be considered a substantially limiting impairment." 29 C.F.R. § 1630.2(j)(1)(viii).

i.  "[I]n determining whether an individual is substantially limited in a major life activity, it may be useful in appropriate cases to consider, as compared to most people in the general population, the condition under which the individual

performs the major life activity; the manner in which the individual performs the major life activity; and/or the duration of time it takes the individual to perform the major life activity, or for which the individual can perform the major life activity." 29 C.F.R. § 1630.2(j)(4)(i).

j.   "Consideration of facts such as condition, manner, or duration may include, among other things, consideration of the difficulty, effort, or time required to perform a major life activity; pain experienced when performing a major life activity; the length of time a major life activity can be performed; and/or the way an impairment affects the operation of a major bodily function. In addition, the non-ameliorative effects of mitigating measures, such as negative side effects of medication or burdens associated with following a particular treatment regimen, may be considered when determining whether an individual's impairment substantially limits a major life activity." 29 C.F.R. § 1630.2(j)(4)(ii).

k.   "In determining whether an individual has a disability under the "actual disability" or "record of" prongs of the definition of disability, the focus is on how a major life activity is substantially limited, and not on what outcomes an individual can achieve. For example, someone with a learning disability may achieve a high level of academic success, but may nevertheless be substantially limited in the major life activity of learning because of the additional time or effort he or she must spend to read, write, or learn compared to most people in the general population." 29 C.F.R. § 1630.2(j)(4)(iii)

l.   "[A]ny private entity offering an examination covered by this section must assure that – (i) The examination is selected and administered so as to best ensure that,

- 14 -

when the examination is administered to an individual with a disability… the examination results accurately reflect the individual´s aptitude or achievement level or whatever other factor the examination purports to measure, rather than reflecting the individual´s [impairment]." 28 C.F.R. § 36.309(b)(1)(i).

35.     In September 2015, prior to the Defendant's first denial of Plaintiff's request for accommodations, the U.S. Justice Department issued an updated technical assistance manual for all testing entities wherein it explained: [3]

   a.   "If a candidate requests the same testing accommodations he or she previously received on a similar standardized exam or high-stakes test, provides proof of having received the previous testing accommodations, and certifies his or her current need for the testing accommodations due to disability, then a testing entity should generally grant the same testing accommodations for the current standardized exam or high-stakes test without requesting further documentation from the candidate."

   b.   Testing entities should defer to documentation from a qualified professional who has made an individualized assessment of the candidate that supports the need for the requested testing accommodations.  Qualified professionals are licensed or otherwise properly credentialed and possess expertise in the disability for which modifications or accommodations are sought.  Candidates who submit documentation (such as reports, evaluations, or letters) that is based on careful consideration of the candidate by a qualified professional should not be required by testing entities to submit additional documentation.  A testing entity should

---

[3] http://www.ada.gov/regs2014/testing_accommodations.html (last visited March 17, 2017).

generally accept such documentation and provide the recommended testing

accommodation without further inquiry.

c.  Reports from qualified professionals who have evaluated the candidate should

take precedence over reports from testing entity reviewers who have never

conducted the requisite assessment of the candidate for diagnosis and treatment.

This is especially important for individuals with learning disabilities because

face-to-face interaction is a critical component of an accurate evaluation,

diagnosis, and determination of appropriate testing accommodations.[4]

d.  A qualified professional's decision not to provide results from a specific test or

evaluation instrument should not preclude approval of a request for testing

accommodations where the documentation provided by the candidate, in its

entirety, demonstrates that the candidate has a disability and needs a requested

testing accommodation.  For example, if a candidate submits documentation from

a qualified professional that demonstrates a consistent history of a reading

disorder diagnosis and that recommends the candidate receive double time on

standardized exams based on a personal evaluation of the candidate, a testing

entity should provide the candidate with double time.  This is true even if the

qualified professional does not include every test or subtest score preferred by the

testing entity in the psychoeducational or neuropsychological report.

36.  Defendant's denial of Plaintiff's reasonable and well documented request is

arbitrary, without basis in fact or in law, and is deliberately indifferent to Plaintiff's civil rights

under the applicable laws.  Providing extended time to Plaintiff would not give him an unfair

---

[4] http://www.ada.gov/regs2014/testing_accommodations.html (last visited March 17, 2017).

advantage.  Mere curiosity, suspicion and/or speculation are not reasonable bases under the applicable laws to require a burdensome level of proof of Plaintiff's disability.

### USMLE Step 1

37.     "The United States Medical Licensing Examination (USMLE) is a three-step examination for medical licensure in the United States and is sponsored by the Federation of State Medical Boards (FSMB) and the National Board of Medical Examiners® (NBME®). The USMLE assesses a physician's ability to apply knowledge, concepts, and principles, and to demonstrate fundamental patient-centered skills, that are important in health and disease and that constitute the basis of safe and effective patient care. Each of the three Steps of the USMLE complements the others; no Step can stand alone in the assessment of readiness for medical licensure.[5]

38.     "Step 1 is a one-day examination. It is divided into seven 60-minute blocks and administered in one 8-hour testing session[.] The number of questions per block on a given examination form will vary, but will not exceed 40. The total number of items on the overall examination form will not exceed 280."[6]

39.     The NBME develops USMLE Step 1 which is administered at various test sites and on various dates throughout the United States, including New York City. The results of each student's scores are reported to that student's medical school.

40.     Plaintiff must pass USMLE Step 1 in order to maintain his eligibility to remain in medical school.  Passing USMLE Step 1 is a requirement for medical licensure in the United

---

[5] http://www.usmle.org (last visited March 17, 2017).

[6] http://www.usmle.org/step-1/ (last visited March 17, 2017).

States and a failed attempt or poor performance on USMLE Step 1 can adversely impact Plaintiff's acceptance into a residency training program.

41.     Plaintiff has already attempted USMLE Step 1 once, without accommodations, and failed because the NBME denied him the extended time accommodations he needed to complete the exam.  If Plaintiff does not take the USMLE with the extended time test accommodation that he requested, which are necessary to best ensure his access to the USMLE, he will continue to be irreparably harmed because he will face dismissal from medical school and be denied an equal opportunity to complete his medical education and pursue a medical career.

42.     The accommodation requested by Plaintiff (100% extended test time) is an accommodation that has been granted to other test-takers with disabilities in prior administrations of the USMLE and would not fundamentally alter the test.

43.     Plaintiff is and will continue to be significantly harmed by Defendant's refusal to provide him the accommodations he needs so as to best ensure that the test results reflect that which the test is designed to measure rather than the effects of Plaintiff's disabilities.

44.     USMLE Step 1 does not claim to measure one's speed of reading or information processing, it claims only to measure one's fund of medical knowledge.

## FIRST CLAIM

**(Violation of the Americans with Disabilities Act, 42 U.S.C. §§ 12101 *et seq.*)**

45.     Plaintiff hereby incorporates by reference paragraphs 1 through 44 of this Complaint as set forth herein.

46.     Plaintiff is a person with a disability in that he experiences a physical or mental impairment, which substantially limits one or more major life activities, including but not limited

to, reading, writing, concentrating, learning, working, taking tests, and the operation of the major

bodily functions of the brain and neurological system. 42 U.S.C. § 12102 (2)(B). Because of his

impairment he needs testing accommodations in order to take the USMLE on a level playing

field.

       47.     Plaintiff meets all the eligibility criteria for taking the USMLE.

       48.     In amending the ADA in 2008, Congress mandated that the Equal Employment

Opportunity Commission (EEOC) issue regulations restoring the applicability of the ADA to

those whom Congress originally intended to protect. 42 U.S.C. §12010(b)(6).

       49.     EEOC regulations provide that "[t]he primary purpose of the ADAAA is to make

it easier for people with disabilities to obtain protection under the ADA. Consistent with the

Amendments Act's purpose of reinstating a broad scope of protection under the ADA, the

definition of "disability" in this part shall be construed broadly in favor of expansive coverage to

the maximum extent permitted…" 28 U.S.C. §1630.1(c)(4).

       50.     The ADA amendments expressly rejected earlier case law because previous

judicial interpretations of what constituted a disability had created an inappropriately high level

of limitation necessary to obtain coverage. 42 U.S.C. § 12102(4)(B) (incorporating findings and

purposes of the ADAAA).[7]

       51.     Title III of the ADA, which is enforced by the U.S. Department of Justice

(hereinafter referred to as "the Department"), states in part, "It is discriminatory to fail to make

reasonable modifications to policies, practices and procedures when necessary to provide goods

and services to a person with a disability."  42 U.S.C. § 12182(b)(2)(A)(ii).

---

[7] In passing the ADA Amendments Act of 2008, congress unequivocally rejected <u>Price v. Board of Medical Examiners</u>, 966 F.Supp. 419 (S.D. W.Va. 1997), <u>Gonzalez v. National Board of Medical Examiners</u>, 225 F.3d 620 (6th Cir. 2000), and <u>Wong v. Regents of University of California</u>, 410 F.3d 1052 (9th Cir. 2005), as being inconsistent with the ADA's intent.   See 2 Cong. Rec. H 8286, 8291 (Sept. 17, 2008).

52.     Title III regulations specifically provide that accommodating an individual with a disability may require the testing entity to change the length of the time for an exam and/or the manner in which the examination is given.  28 C.F.R. §36.309 (b) (iii) (2).

53.     Defendant NBME administers the USMLE, an examination related to applications and credentialing for postsecondary education, professional, and trade purposes, within the meaning of the ADA, 42 U.S.C. § 12189.

54.     The ADA requires Defendant to offer these examinations in a manner accessible to persons with disabilities. 42 U.S.C. § 12189.

55.     The Department regulations mandate that a private entity offering examinations modify its examinations as necessary to best ensure full and equal access to persons with disabilities, including through the provision of extra testing time to permit completion of such examinations. 28 C.F.R. §§ 36.309(b) & (c).

56.     The Department's regulations prohibit Defendant NBME from administering the USMLE without ensuring that the scores reported "accurately reflect the applicant's aptitude or achievement level or whatever other factor the test purports to measure, rather than reflecting the applicant's [disability]." 28 C.F.R. § 36.309(b) (1) (i).

57.     Plaintiff requires testing accommodations to participate in a fair, full, and equal basis on the USMLE.  The modifications that Plaintiff needs would not impose a fundamental alteration but rather, would attempt to level the field and allow his medical knowledge and abilities to be fairly and accurately measured.

58.     Defendant NBME has thus discriminated, and continues to discriminate, against Plaintiff on the basis of his disability by intentionally denying him an equal opportunity to demonstrate his medical knowledge and skill on the USMLE in violation of the ADA,

specifically 42 U.S.C. §12189.

59.    Defendant NBME's policies and practices violate Plaintiff's rights under the ADA and the regulations promulgated thereunder. Defendant's discriminatory policies and practices include, but are not limited to, its:

   a.   Failure to grant accommodations when Plaintiff submitted the requisite documentation consistent in all respects with the NBME's own guidelines;

   b.   Failure to give defer to or give considerable weight to Plaintiff's evaluators' recommendations;

   c.   Failure to provide an adequate explanation for the NBME's request for additional and/or more recent information; and

   d.   Failure to engage in good faith in the interactive process to consider and implement effective reasonable accommodations for Plaintiff's disability.

60.    Plaintiff will be irreparably harmed if the NBME continues its illegal refusal to provide him the test modifications specifically recommended by his clinicians, in that:

   a.   Plaintiff has been unable to pass the USMLE without extended time accommodations (the same extended time accommodations he has received throughout his academic career);

   b.   Plaintiff will be dismissed from medical school if he is unable to pass the USMLE;

   c.   Requiring Plaintiff to take the UMSLE without sufficient accommodation puts him at distinct disadvantage given his disabilities;

   d.   Reduced performance on the USMLE as a result of not receiving the proper accommodations significantly reduces Plaintiff's future professional career

options; and

e.  Taking the USMLE without the test modifications requested would be a waste of
Plaintiff's time and money.

f.  As a result of the NBME's denial of accommodations Plaintiff has experienced
sleep and appetite disturbance, fatigue, muscle tension, and headaches.

61.     As a result of the NBME's violations of the ADA, Plaintiff has suffered or will
suffer great injury, including, but not limited to, lost employment opportunities, out-of-pocket
pecuniary losses, and severe emotional distress and anguish.

62.     The NBME's conduct constitutes an ongoing and continuous violation of the
ADA.  Unless enjoined from doing so, Defendant will continue to violate said law.  Said
conduct, unless enjoined, will continue to inflict injuries for which Plaintiff has no adequate
remedy at law.  Consequently, Plaintiff is entitled to injunctive relief and reasonable attorney's
fees under the ADA, 42 U.S.C. § 12188.

WHEREFORE, Plaintiff requests relief as set forth below.

## SECOND CLAIM

**(Violation of New York State Human Rights Law, NY Exec L § 290, *et. seq.*)**

63.     Plaintiff hereby incorporates by reference paragraphs 1 through 62 of this
Complaint as set forth herein.

64.     Due to considerations of judicial economy, convenience and fairness to litigants
this Court has pendent jurisdiction pursuant to 28 U.S.C. § 1367, in that all facts of this matter
derive from a common nucleus of operative facts and Plaintiff expects to try them all in one
judicial proceeding.

65.     New York State's Human Rights Law (NYSHRL) ensures "that every individual

within the state is afforded an equal opportunity to enjoy a full and productive life....without discrimination because of age, race...or disability" where disability is defined as "(a) physical, mental or medical impairment resulting from anatomical, physiological or neurological conditions...[which] is demonstrated by clinical or laboratory diagnostic techniques or (b) a record of such an impairment or (c) a condition regarded by others as such an impairment." Plaintiff is an individual with a disability within the meaning of the NY Exec L § 290, § 291, and § 292.

66.    Defendant NBME has discriminated, and continues to discriminate, against Plaintiff on the basis of his disability by denying him an equal opportunity to demonstrate his medical knowledge and skills on the USMLE in violation of the NYSHRL.

67.    As a result of Defendant NBME's violation of NYSHRL, Plaintiff has suffered and will continue to suffer great injury, including, but not limited to, delayed completion of his medical degree, lost employment opportunities, out-of-pocket pecuniary losses, and severe emotional distress and anguish.  As a result of the NBME's denial of accommodations Plaintiff has experienced sleep and appetite disturbance, fatigue, muscle tension, and headaches.

68.    Defendant's conduct constitutes an ongoing and continuous violation of the NYSHRL.  Unless enjoined from doing so, Defendant will continue to violate said law.  Said conduct, unless enjoined, will continue to inflict injuries for which Plaintiff has no adequate remedy at law.  Consequently, Plaintiff is entitled to injunctive relief and monetary relief under the NYSHRL, which provides that, in addition to injunctive relief, violations may be remedied by compensatory damages.

## THIRD CLAIM

### (Violation of New York City Human Rights Law, N.Y.C. Admin. Code §8)

69.     Plaintiff hereby incorporates by reference paragraphs 1 through 68 of the complaint as set forth herein.

70.     Defendant offers the USMLE in New York City.

71.     Plaintiff is an individual with a disability within the meaning of the NYCHRL. N.Y.C. Code § 8-102 (16) (a).

72.     Defendant NBME has discriminated, and continues to discriminate, against Plaintiff on the basis of his disability by denying him an equal opportunity to demonstrate his medical knowledge as assessed by the USMLE by failing to provide testing accommodations in violation of the NYCHRL.  N.Y.C. Code § 8-107.

73.     As a result of the Defendant's violation of the NYCHRL, Plaintiff has suffered or will suffer great injury, including, but not limited to, delayed completion of his medical degree, lost employment opportunities, out-of-pocket pecuniary losses, and severe emotional distress and anguish.  As a result of the NBME's denial of accommodations Plaintiff has experienced sleep and appetite disturbance, fatigue, muscle tension, and headaches.

74.     The Defendant's conduct constitutes an ongoing and continuous violation of the NYCHRL.  Unless enjoined from doing so, Defendant will continue to violate said law and will continue to inflict injuries for which Plaintiff has no adequate remedy at law. Consequently, Plaintiff is entitled to injunctive relief, damages (including punitive damages), reasonable attorney's fees, and other monetary relief under the NYCHRL.  N.Y.C. Admin. Code § 8-502.

## FOURTH CLAIM

### (Declaratory Relief)

75.     Plaintiff hereby incorporates by reference paragraphs 1 through 74 of this Complaint as set forth herein.

76.     A present and actual controversy exists between Plaintiff and Defendant concerning their rights and respective duties.  Plaintiff contends that Defendant violated and continues to violate his rights under the Americans with Disabilities Act, as amended, 42 U.S.C. sections 12101, *et seq*., and his rights under New York State Human Rights Law, N.Y. Exec L § 290, *et seq*., and New York City Human Rights Law, N.Y.C. Admin. Code 8-101, *et seq.* Based upon information and belief, Defendant denies these allegations, thus declaratory relief is necessary and appropriate.

77.     Plaintiff seeks a judicial declaration of the rights and duties of the respective parties accordingly.

WHEREFORE, Plaintiff requests relief as set forth below.

## **RELIEF REQUESTED**

WHEREFORE, Plaintiff prays for judgment as follows:

A.      An order compelling the NBME, or those acting as agents for or in concert with it, to provide test accommodations to Plaintiff, by providing him with 100% (double) extended time for all future administrations of the USMLE, including Step 1, Step 2, and Step 3;

B.      An order granting such other injunctive relief as may be appropriate;

C.      An order granting declaratory relief;

D.      Enter judgment against the Defendant awarding Plaintiff recovery of his reasonable attorney's fees, costs and expenses incurred in pursuing his rights and in bringing and prosecuting this litigation.  The costs incurred thus far are in excess of $40,000 including, but not limited to, USMLE registration occasioned by the NBME's denial of Plaintiff's requests, additional neuropsychological and medical testing, and the need to engage counsel in pursuing his civil rights;

E.      Enter judgment against the Defendant NBME awarding Plaintiff such

compensatory damages as may be proven by Plaintiff and to which he is entitled; and

F.      Award for such other and further relief as the Court may deem just and proper.


Respectfully submitted,

Dated:      Brooklyn, NY

April 7, 2017

By:   _Jo Anne Simon_

Jo Anne Simon, Esq. (JS2793)
Jo Anne Simon, P.C.
356 Fulton Street, 3rd Floor
Brooklyn, NY  11201
Telephone:     718-852-3528
Facsimile:      718-875-5728
Email: JoAnne@JoAnneSimon.com


*Attorneys for Plaintiff Brandon G. Waxman*